Merrimack,
Feb. 7, 1911.

### STRAW v. PITTSFIELD SHOE CO.

A servant who suffers injury by using a hole in the wall of a mill as a means of exit from the premises cannot recover of the master therefor, if the latter did not intend the aperture for such use and had no reason to anticipate that it would be so employed.

CASE, for negligence. Trial by jury and verdict for the plaintiff. Transferred from the April term, 1910, of the superior court by *Wallace,* C. J., on the defendants' exception to the denial of their motion for the direction of a verdict in their favor.

*Remick & Hollis, Harry J. Brown,* and *Alexander Murchie (Mr. Murchie* orally), for the plaintiff.

*Streeter, Hollis, Demond & Woodworth* (*Mr. Woodworth* orally), for the defendants.

PEASLEE, J. The defendants' motion for a directed verdict was based upon the ground (among others) that the place where the plaintiff was injured was not one where his duty required him to be, or where the defendants ought to have anticipated he would go, and therefore they owed him no duty to make the place safe. He was injured by being caught upon pins projecting from a revolving shaft located nine inches from the rear wall of an open wood-shed and nearly two feet above the ground. Timbers six inches square and about as high as the shaft formed the frame supporting it, the front timber being about three feet farther from the wall than the shaft and the rear one a little outside the shed wall. Power was taken from this shaft to operate a wood-saw. The saw was about five feet front of this frame, and so located that the man taking away from it stood in an open space at the end of the saw-bench and in front of the frame carrying the driving-shaft.

The plaintiff had worked about this place some two years before the accident. He did not operate the saw, but assisted in handling the wood, drove a team, and did odd jobs about the premises. His eye-sight was impaired, and there was some evidence that he was not of average intelligence. There is no pretence that he had any occasion to go behind the front timber of the driving-shaft frame before mentioned for the first year and a half of his employment. At the end of that time a hole was cut in the rear wall, so that the sawdust which accumulated in front of and to some extent under this frame might be more conveniently thrown out. This opening was two feet ten inches wide by three feet ten inches high, and the bottom of it was eighteen inches above the top of the shaft. The boards that were cut out were made into a shutter to close the opening when it was desirable to do so. This shutter was not hinged to the studding, but had to be removed bodily. The opening was not made for a passageway for human beings, and the plaintiff never found occasion to so use it in the course of his work for the defendants until the time of the accident. He had, however, been through it on his own affairs more than fifty times and had seen some of his fellow-servants do so a few times. There was no evidence that the defendants knew of such use. Upon the day of the accident, the plaintiff, when inside the

shed, had occasion to go behind it, and instead of going around, attempted to pass through this opening and was caught upon the projecting pins and injured. His excuse for not going around was that there were wood-piles at either end of the shed, so that he would have had to travel considerably farther.

Upon these facts there was nothing for the jury upon the question of work-place. This was not prepared for one, had none of the appearance of one, and so far as the defendants knew had never been so used. There was but infrequent occasion for any one to go behind the shed, and the way around the ends was not long even when there was more or less wood piled there; while this opening was over three feet above the ground, and the approach to it was obstructed by the timber three feet from the wall and the revolving shaft near to it. The plaintiff claims it could be found that the sawdust was quite deep there on the day of the accident, because he testified he found it an easy step into the window. When it is considered that the plaintiff's statement to this effect applied to all the times he went through the opening, and to going in either direction, it is apparent that his ideas of an easy step are not such as his employers were called upon to take into account in considering what further obstruction they ought to put in the way of one predisposed to the use of the opening for a door. There is no evidence that the defendants were aware of his extraordinary agility, and unless they were they could not be expected to act in reference to it. The evidence shows conclusively that the plaintiff was in a place where he had no business to be, and for the condition of which the defendants are not responsible to him. "A master's duty in respect to furnishing his servants a safe place in which to work extends to such parts of his premises only as he has prepared for their occupancy while doing his work, and to such other parts as he knows or ought to know they are accustomed to use while doing it." *Morrison* v. *Fibre Co.*, 70 N. H. 406, 408.

*Verdict set aside: verdict and judgment for the defendant.*

YOUNG, J., dissented: the others concurred.