**WILLIAMS v. ATLANTIC COAST LINE R. CO.**

No. 13416.

United States Court of Appeals Fifth Circuit.

July 17, 1951.

Edwin Maner, Jr., Savannah, Ga., for appellant.

Alex A. Lawrence, Savannah, Ga., for appellee.

Before HOLMES, BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Frank Lamar Williams, a negro section laborer in the employ of appellee, was drowned at a place in a swamp where appellee's railroad track was washed out.

This suit was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., by decedent's widow, in the capacity of administratrix, seeking damages to compensate her for the pecuniary loss she sustained by reason of the death of her husband.

During April, 1948 heavy rains occurred in southwest Georgia. Appellee's track near Thomasville in the direction of Valdosta was washed out at several different places. The railroad trains were blocked and the work in question was emergency work necessary to be performed at night. The work consisted of cribbing up the track with cross ties placed one on top of another.

The wash-out at the point where the particular work was being done was 30 or 40 feet wide. On one side of the track the water extended about 4 feet beyond the rails and about 12 feet therefrom on the other side. At the place where the cribbing work was being done the water was about 4½ feet deep, and 6 or 8 feet from that place where Williams' body was found on the bottom, the water was 7 or 8 feet deep.

Part of the gang had been working in the water during the day time immediately preceding the evening in question, and Williams had been "toting" cross ties to them. After stopping work that afternoon the employees returned to the work car where they ate supper. Following supper, they were carried back to the scene of the wash-out a mile and a half from the camp.

Camp fires were built along the track for warmth and for illumination. The foreman, Mr. Hanes, denied ordering Williams into the water, but there was testimony that because the water was cold the crew was changed for the night work, and that Mr. Hanes, told "everybody who wasn't in the water during the day to get in the water that time." It was for the jury to say whether the foreman did in fact order Williams into the water.

There was further testimony that when Williams was slow about responding to the direction, Hanes, who was then in the water himself, said, "all right, Frank, come on and go to work." Williams then entered the water within 4 or 5 feet from where Hanes was working. Hanes testified that Williams "began to swim around and I didn't pay any attention to him." Plaintiff's witness, Tyus Johnson, testified that he heard Williams holler "Oh, oh-hey, hey, look" "like he was laughing." Johnson thought Williams was playing and told him, "boy, you hush that noise, you isn't fooling anybody."

When Johnson returned with another cross tie, he noticed that Williams was

missing and called his disappearance to Mr. Hanes' attention. Hanes recovered his body from the bottom of the water and endeavored to resuscitate him, but in vain.

At the outset of the trial, the witnesses were placed under the rule, that is they were excluded from the courtroom while other witnesses were testifying. To assist defendant's counsel the Court excused one of the defendant's witnesses from the rule. The plaintiff's attorney pointed out that the widow knew nothing of the accident, and requested permission for a witness to be excused to assist him. The Court denied that request and the plaintiff reserved an exception. In this ruling we cannot say that the Court abused its discretion. The exclusion *vel non* of witnesses from the courtroom, and the permission of one or more to remain in the courtroom are ordinarily within the sound discretion of the trial judge. United States v. Five Cases, etc., 2 Cir., 179 F.2d 519, 522; Morrow v. United States, 7 Cir., 101 F.2d 654, 656; Holder v. United States, 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010.

In the course of his oral charge to the jury, the District Judge instructed them as follows: "In connection with the furnishing of life-saving devices, I charge you, gentlemen, that you may look into the evidence to see what the custom is in connection with that in order to ascertain whether there was a duty for the defendant to furnish life-preservers or other life-saving equipment. If you should find from the evidence that the circumstances did not require such equipment or if you should find that the Company had no reason to anticipate that the deceased would be in water where such equipment may have been of use then there would be no liability on the part of the railroad company in that connection. I charge you that before you could consider that there was negligence in that respect you would have to determine that warning was given by the employee as to his dangerous situation in time to have put the Company on notice thereof so that the equipment might have been used."

The plaintiff objected to that part of the quoted instruction, "that you may look in-to the evidence to see what the custom is in connection with that in order to ascertain whether there was a duty for the defendant to furnish life-preservers or other life-saving equipment."

We cannot say that there was prejudicial error in that part of the instruction, although the Court might well have further instructed the jury that while evidence of custom is admissible it is not necessarily controlling. Mr. Justice Holmes stated the rule as follows: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Texas & Pacific Ry. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905. See also Midland Valley R. R. Co. v. Bell, 8 Cir., 242 F. 803, 808; Terminal R. Ass'n of St. Louis v. Schorb, 8 Cir., 151 F.2d 361, 364.

The Court overruled the plaintiff's separate objection to the concluding part of the instruction hereinabove quoted, viz.: "* * * I charge you that before you could consider that there was negligence in that respect you would have to determine that warning was given by the employee as to his dangerous situation in time to have put the Company on notice thereof so that the equipment might have been used."

It is the duty of the employer to exercise reasonable care to furnish the employees with a safe place to work, but there are times when railroad employees must work in dangerous places to keep the trains moving. Then as the risk increases the duty becomes "more imperative", "Reasonable care becomes then, a demand of higher supremacy; and yet, in all cases it is a question of the reasonableness of the care; reasonableness depending upon the danger attending the place or the machinery." Patton v. Texas & Pacific Ry. Co., 179 U.S. 658, 664, 21 S.Ct. 275, 278, 45 L.Ed. 361; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 63 S.Ct. 1062, 87 L.Ed. 1444. The diligence required is commensurate with the dangers reasonably apprehended.

When the place is such that life preservers, safety belts, buoys, ropes, poles,

or other life saving equipment may be reasonably required to meet a foreseeable danger to an employee, it is open to the jury to find that the employer owes a duty to furnish to or for the use of employees such equipment or appliances. Snow v. Texas & Pacific Ry. Co., La.App., 166 So. 200;[1] Saunders v. Boston & M. R. Co., 82 N.H. 476, 136 A. 264, 50 A.L.R. 367, and annotation at 50 A.L.R. 372; 35 Amer. Juris. p. 616, Master & Servant, Section 188.

■ In this case the Court properly left to the jury the question of whether the railroad company was under a duty to furnish for the use of its employees life-saving equipment. However, as has been observed, it then charged that before the jury could consider negligence in that respect it would have to determine that warning was given by the employee as to his dangerous situation in time to have put the company on notice thereof. In this charge the Court was plainly in error. The employer must make proper tests and inspections to discover dangers in the place where the employees must work, and after ascertaining their existence must take reasonable precautions for the safety of the employees. The employee has a right to rely upon the performance of this duty by the employer and to govern his actions accordingly. 35 Amer.Juris. p. 604, Master & Servant, Section 175, p. 612, Master & Servant, Section 184. Indeed, even though the employee may know that the employer has been negligent in the furnishing of a safe place to work or necessary safety equipment, the employee does not under this Act assume the risks of such danger. Title 45 U.S.C.A. § 54; Tiller, Exec. v. Atlantic Coast Line R. R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610.

The Court's charge in this respect was not only erroneous, it was highly prejudicial. It did in fact positively preclude recovery upon the ground of failure to furnish safety equipment, for the plaintiff had made no showing that the deceased warned the railroad of the dangerous condition. For this error the case must be reversed.

■ The plaintiff objected to the Court's charge to the jury that if Williams died of a heart attack there would be no liability on the part of the railroad. One of the grounds of negligence alleged in the complaint and relied upon in the testimony was that the defendant negligently ordered Williams into the water knowing that he had just recently finished his evening meal. If the defendant's negligence brought on cramps or heart attack and death ensued the defendant would still be responsible. 16 Amer.Juris. p. 60, Death, Section 80. MacDonald v. Metropolitan Street Ry. Co., 219 Mo. 468, 11 S.W. 78. The Court therefore erred in charging the jury without qualification that if Williams died of a heart attack the defendant would not be liable.

■ The appellant's specifications of error Nos. 4, 7 and 8 are based upon the failure of the Court to give particular instructions to the jury at the written request of the plaintiff. The record does not show that before the jury retired to consider its verdict the plaintiff objected to such failure, "stating distinctly the matter to which he objects and the grounds of his objection." Fed.Rules Civ.Proc. rule 51, 28 U.S.C.A. Therefore those specifications of error cannot be considered. Frasca v. Howell, 87 U.S.App.D.C. 52, 182 F.2d 703.

■ As to requested written charges 5, 6, and supplemental charge 2, the plaintiff did comply with Rule 51, supra. In our opinion, however, each of those requested instructions placed too high a duty upon the employer. Under the Federal Employer's Liability Act in cases not covered by the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., the employer is not an insurer of the safety of the place of work, or of the instrumentalities or tools with which the employee is required to work, but the employer is required to exercise reasonable care to see that the employee is furnished

1. We do not mean to approve all that is said in this Louisiana case, for as would be expected under the practice obtaining in that state, some matters are decided by the Court which would elsewhere be left to the jury.

with a safe place to work and with safe tools and instrumentalities for the performance of the work. Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 165 F.2d 135, 138; Bailey v. Central Vermont Ry., 319 U.S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444; Seaboard Air Line Ry. v. Horton, 233 U.S. 492, 501, 502, 34 S.Ct. 635, 58 L.Ed. 1062.

For the errors noted, the cause is hereby reversed and remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.